**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| JANINE WILLIAMS, individually and on behalf of all others similarly situated | : : : | |
| v. | : : | CIVIL ACTION NO. 18-4752 |
| THE PISA GROUP, INC. | : | |

---

MCHUGH, J.                                                              February 24, 2023

## MEMORANDUM

In 1991, Congress reacted to "consumers['] . . . outrage[] over the proliferation of intrusive, nuisance [telemarketing] calls to their homes" by enacting the Telephone Consumer Protection Act (TCPA). *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (quoting TCPA, § 2, ¶ 6, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)). The TCPA provides a private right of action for violations of the Act or the Federal Communication Commission's (FCC) implementing regulations. 47 U.S.C. § 227(c)(5). One such FCC regulation—the basis for the present suit—prohibits telemarketing calls to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry (DNC) of persons who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c)(2).[1] Telemarketers who violate this regulation are exempt from liability only if they had the recipient's express written consent for the call, an existing relationship with the recipient, or if the violation was a result of

---

[1] The same rule applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e). For purposes of concision, I refer to personal residential and wireless telephone numbers collectively as "residential" in this Memorandum, in contrast with business or government telephone numbers.

an error despite the telemarketer maintaining procedures, training, and records to generally avoid such violations.  *Id.*

Plaintiff Janine Williams contends that Defendant Pisa Group (PGI) violated the TCPA by calling her and numerous others at their residential phones despite their phone numbers being registered on the DNC and despite their not having an established business relationship (EBR) with PGI.  PGI admits to calling Williams and seven other individuals in error thirty-seven times, and Plaintiff has submitted an expert report suggesting that PGI may have improperly called as many as 30,373 residential telephone numbers that fall within the definition of Plaintiff's proposed class.  Plaintiff now moves to certify the following class:

> All natural persons in the United States who, within four years preceding the filing of this case, received more than one telephone solicitation call from PGI within a 12-month period telemarketing newspaper subscriptions more than 31 days after registering their telephone number with the National Do-Not-Call Registry.

Pl.'s Memo. in Support of Am. Mot. for Class Cert. at 21, ECF 43-1.  After reviewing Plaintiff's Amended Motion for Class Certification[2] and the record before me, I am satisfied that Williams has identified issues appropriate for resolution on a class-wide basis and has met the requirements of Federal Rule of Civil Procedure 23.  I will thus certify the class.

## I.      Regulatory and Factual Background

### A.   Regulatory framework

FCC regulations prohibit telemarketing calls to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry (DNC) of persons who do not wish to receive telephone solicitations," regardless of whether the telemarketer is calling a landline or cellular phone.  47 C.F.R. § 64.1200(c)(2),(e).  Because the FCC promulgated

---

[2] This case was transferred to my docket on July 22, 2022, ECF 41, and the Amended Motion for Class Certification was filed on November 15, 2022, ECF 43.

this rule under the TCPA, individuals on the DNC who receive calls that violate the rule have a private right of action against the telemarketer.  47 U.S.C. § 227(c)(5).  Plaintiffs may seek an injunction and damages, and a court may award treble damages if the defendant willfully or knowingly violated the regulation.  *Id*.

The FCC's rule provides defendants with three potential regulatory defenses in such actions. First, the rule exempts liability when the defendant

> can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following standards:
>
> (A) Written procedures.  It has established and implemented written procedures to comply with the national do-not-call rules;
>
> (B) Training of personnel.  It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;
>
> (C) Recording.  It has maintained and recorded a list of telephone numbers that the seller may not contact;
>
> (D) Accessing the national do-not-call database.  It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.

47 C.F.R. § 64.1200(c)(2)(i).  Second, the defendant is exempt from liability if "[i]t has obtained the subscriber's prior express invitation or permission," which "must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed."  47 C.F.R. § 64.1200(c)(2)(ii).  Lastly, the defendant is exempt from liability if "[t]he telemarketer making the call has a personal relationship with the recipient of the call."  47 C.F.R. §

64.1200(c)(2)(iii).   One such form of relationship is an established business relationship, commonly referred to as an EBR, 16 CFR § 310.4(b)(1)(iii)(B)(2), which the FCC defines as

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(5).

Each of these three regulatory exemptions from liability is an affirmative defense that a defendant bears the burden of proving.  *See* 16 CFR § 310.4(b)(1)(iii)(B); *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 366 (3d Cir. 2015) (citing *Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1253 (11th Cir. 2014); *Hartley-Culp v. Credit Mgmt. Co.,* No. 14-0282, 2014 WL 4630852, at *2 (M.D. Pa. Sept. 15, 2014); *Elkins v. Medco Health Solutions, Inc.,* No. 12–2141, 2014 WL 1663406, at *6 (E.D. Mo. Apr. 25, 2014)) ("[T]he courts generally have placed the burden to prove these TCPA exceptions on the creditor."); *KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 528 (E.D. Pa. 2019) (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)) ("Express consent is.... an affirmative defense for which the defendant bears the burden of proof."); *United States v. Dish Network, LLC*, 80 F. Supp. 3d 917, 922 (C.D. Ill. 2015) ("The Existing Business Relationship exception raised by [Defendant] was an affirmative defense. . . . [Defendant], therefore, had the burden to prove that no issues of fact existed on this defense.").

**B. PGI and Janine Williams**

Defendant PGI is a nationwide call center company that solicits newspaper subscriptions via phone calls. Maggio[3] Dep. at 59:5-13; 7:17-8:5; 18:7-12, ECF 43-2. PGI enters into contracts with newspapers—including the Philadelphia Inquirer—through which PGI obtains consumers' phone numbers and other contact information for telemarketing. *Id.* at 13:4-10; 118:8-11; 210:9-211:17; 28:2-13; Def.'s Answers and Objs. to Pl.'s First Set of Interrogs. at 4-5, ECF 43-14. Its business model primarily consists of "win-back" campaigns, in which PGI "call[s] customers who have recently expired or canceled their subscription and call[s] them back and tr[ies] to get them to review [their decision to cancel their subscription or let it lapse]." Maggio Dep. at 17:16-21. PGI maintains customer relationship management (CRM) databases to track phone numbers with which it claims to have an EBR. Def.'s Answers and Objs. to Pl.'s First Set of Interrogs. at 6. PGI does not use or consider prior express consent when determining whether they can legally make telephone calls to individuals on the DNC registry and instead makes such calls only when PGI believes it has an EBR with an individual. *Id.* at 5.

Plaintiff Janine Williams is a Philadelphia resident. She registered her cellular phone number on the National Do Not Call Registry on June 28, 2013, where it continues to be registered. Williams Decl. at ¶¶ 5-6, ECF 43-4. She temporarily subscribed to the Philadelphia Inquirer, and her subscription ended on October 20, 2013. Maggio Dep. at 64:23-66:7; Williams Decl. at ¶ 11. PGI called Williams' cellular phone at least twelve times without her consent between April 29, 2015 and October 26, 2015—more than eighteen months after her Philadelphia Inquirer subscription ended. Maggio Dep. at 91:18-92:4; Maggio Aff. at ¶ 10, ECF 43-6. PGI claims that these calls were the result of an error in which "numbers that were outside of the EBR exemption

---

[3] Michael Maggio is the Executive Vice President for PGI. Aff. of Michael Maggio ¶ 1, ECF 43-6.

. . . were dialed." Maggio Dep. at 20:19-21.  Williams contends that PGI called her many more than twelve times.  Williams Decl. at ¶ 10; Pl.'s Memo. in Support of Am. Mot. for Class Cert. at 5-6 (citing Maggio Dep. at 229:11-22).

PGI has stated that an internal audit revealed seven other Philadelphia residents who were improperly dialed a total of twenty-five times despite not having an EBR with PGI.  Maggio Aff. at ¶ 12; Maggio Dep. at 240:7-241:25; 23:8-19.  PGI claims that all thirty-seven of these calls were the result of a single error that took place on April 29, 2015, in which PGI accidentally used a former active subscriber list rather than the current one, resulting in Williams and the other seven individuals being listed as having an EBR with PGI.  Maggio Aff. at ¶¶ 7-9.  Because PGI believed it had an EBR with Williams and the other seven individuals, PGI did not believe it needed to cross-reference the phone numbers with the national DNC under the TCPA.  *Id.*

### C.  Plaintiff's analysis of PGI's call history

Plaintiff suggests that the thirty-seven documented calls are just the tip of the iceberg of PGI's TCPA violations during the class period spanning November 2, 2014 to November 2, 2018. Plaintiff retained Anya Verkhovskaya, the President and Chief Executive Officer of Class Expert Groups, LLC, to assess PGI's internal data and determine how many improper calls were made during the class period.  *See* Expert Report of Anya Verkhovskaya, ECF 43-3.  Specifically, Verkhovskaya's analysis concerned telephone numbers that:

> received two or more calls from the Defendant during the class period, November 2, 2014, through November 2, 2018, and within any 12-month period, after being on the NDNCR [National Do Not Call Registry] for 32 days or more and more than 540 days (18 months) after the most recent "Stop Date" for the telephone number within the Defendant's purported CRM Data; and
>
> were residential as opposed to business or government telephone numbers during the class period; and

notice of class certification that meets due process requirements can be provided to those individuals who were using the telephone numbers at issue during the proposed Class Period.

*Id*. at 3. After assessing the data using the process described below, Verkhovskaya provided two expert opinions. First, Verkhovskaya concluded that PGI made telephone calls meeting the above criteria to an estimated 30,373 residential telephone numbers. *Id*. at 4. Second, Verkhovskaya concluded that "[t]here is a reasonable and effective method of issuing class certification notice that meets due process requirements to those individuals who were using the telephone numbers at issue during the proposed Class Period." *Id*.

Verkhovskaya's analysis proceeded roughly as follows. First, Verkhovskaya obtained PGI's Call Logs for the proposed Class Period, which included phone numbers, call dates, and call times. She then standardized and "cleaned up" the data for further analysis. *Id*. at 13-14. Verkhovskaya also obtained PGI's CRM data, which included information as to PGI's past and current customers, including the "Stop Date" of customers' subscriptions. *Id*. at 14-15. Verkhovskaya then identified how many telephone numbers received two or more calls within any 12-month period in the Class Period and 540 days[4] or more after the most recent Stop Date for the telephone number within the CRM data. *Id*. at 16-17. There were 996,504 such telephone numbers (the "2+ Numbers"). *Id*. Verkhovskaya then used a statistically significant random sample to estimate how many of the 2+ Numbers received two or more calls from PGI within any 12-month period after being on the national DNC registry for 32 days or more.[5] *Id*. at 17-18. Next, Verkhovskaya worked with a data provider to remove any telephone numbers that were not residential telephone numbers from the list. *Id*. at 18-20. This analysis revealed that 497 telephone

---

[4] 540 days equals 18 months if each month had 30 days.

[5] Verkhovskaya's data vendor Pacific East obtains National DNC registry information from the Federal Trade Commission. *Id*. at 17.

numbers—3.05% of the numbers in the statistically significant random sample—were residential telephone numbers that met the criteria listed above. *Id*. at 20. Verkhovskaya extrapolated from this random sample to estimate the existence of 30,373 telephone numbers that meet the above criteria. *Id*. Verkhovskaya claimed that the methodology used on the random sample could be applied to the entirety of the 2+ Numbers. *Id*.

Verkhovskaya next described a process that she claims satisfies due process requirements for reliably and effectively issuing a class certification notice to the individuals who were using the telephone numbers at issue during the Class Period. Verkhovskaya noted that PGI's CRM data includes mailing addresses for past and present customers, and further noted that she could update class member addresses using the United States Postal Service National Change of Address database and the services of various data vendors. Verkhovskaya proposed sending short-form notices of class certification via First-Class mail postcard and posting long-form notices online.

Before moving for class certification, Plaintiff provided Verkhovskaya's report to PGI for their review. *See* Stinnett Aff., ECF 43-10. PGI's expert Christopher Stinnett provided a single critique of Verkhovskaya's analysis: Stinnett claimed that rather than standardizing the statutory 18-month period for EBR to 540 days, Verkhovskaya should have utilized the actual alleged days in any 18-month period, which Stinnett asserted is 547.5 days. *Id*. at 3, 5. Stinnett next analyzed the same random sample that Verkhovskaya had analyzed and concluded that no telephone numbers that met the relevant criteria received a violative call when assessed using a 547-day (rather than 540-day) period. *Id*. at 5-7. Stinnett concluded that, outside of Williams and the other seven individuals that PGI admits to calling in error, the putative class would have zero members. *Id*.

Plaintiff contests Stinnett's argument that 547 days is the appropriate number.  Pl.'s Memo. in Support of Am. Mot. for Class Cert. at 11.  Nonetheless, in response Verkhovskaya conducted an additional analysis using Stinnett's 547-day period and concluded that there still would be a sufficient number of affected consumers to warrant certification of a class.  Specifically, Verkhovskaya

> identified **279** unique telephone numbers that received **1,155** telephone calls, that were residential and had received two or more calls from or on behalf of the Defendant during the proposed class period 11/02/2014 – 11/02/2018, and within any 12-month period, after being on the [national DNC registry] for 32 days or more and more than 547 days after the most recent "Stop Date" for the telephone number within the Defendant's purported CRM Data.

Verkhovskaya Supp. Decl. at 2 (emphasis in original), ECF 43-12.  Verkhovskaya further claimed that Stinnett's analysis was flawed because it inappropriately "mix[ed] and match[ed] a subset of telephone numbers of a statistically significant sample," "render[ing] the extrapolation meaningless."  *Id*.

## II.    Legal Standards Governing Class Certification

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 309 n.6 (3d Cir. 2009) (internal citation omitted).  Thus, the party seeking to certify a class "bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23."  *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 485 (3d Cir. 2015) (discussing and clarifying the preponderance of evidence standard in class certification determinations).

The requirements of Rule 23 are well-established.  All potential classes must initially "prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)."

*Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation marks omitted).  If the plaintiff satisfies the four requirements of Rule 23(a), they may seek to certify a class of one of three types, each with additional requirements.  Fed. R. Civ. P. 23(b)(1)-(3).

Williams here seeks certification under Rule 23(b)(3).  Rule 23(b)(3) requires proving, first, that questions of law or fact common to class members predominate over individualized questions, which is commonly called the "predominance" requirement, and, second, that the class action device is superior to other methods for resolving the claims, which is often referred to as the "superiority" requirement.  Fed. R. Civ. P. 23(b)(3).

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *Hydrogen Peroxide*, 552 F.3d at 309 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  In conducting this inquiry, the district court must assess "the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove impact at trial." *Id.* at 312 (citations omitted); *see also Behrend*, 569 U.S. at 34 (noting that under Rule 23(b)(3), "the court's duty is to take a close look at whether common questions predominate over individual ones") (cleaned up).  But Rule 23 "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  To determine whether the plaintiff has carried his burden by a preponderance of the evidence, the "rigorous analysis" prescribed by the Court of Appeals means the district court "cannot be bashful." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 591 (3d Cir. 2012) (quotation marks omitted).  It "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.*; *see also Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 482 (3d Cir. 2018).

### III.    The Class's TCPA Claim

To determine whether to certify Williams' proposed class, I must be "satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *Hydrogen Peroxide*, 552 F.3d at 309 (internal quotation marks omitted).  To prevail, Williams must prove by a preponderance of the evidence that the prerequisites of both Rule 23(a) and Rule 23(b)(3) are met.

Under Rule 23(a), Williams must prove there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation. And under Rule 23(b)(3), Williams must prove that questions of law or fact common to class members predominate over individualized questions and that the class action device is superior to other methods for resolving the claims.

The Court of Appeals has noted that "[i]t is often appropriate to discuss commonality and predominance together because the commonality inquiry is subsumed into the predominance inquiry." *See, e.g., Reyes*, 802 F.3d at 486; *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) ("[W]here an action is to proceed under Rule 23(b)(3), the commonality requirement is subsumed by the predominance requirement.") (internal quotation marks omitted). I will follow that guidance and conduct the commonality analysis alongside the predominance one.

### A.  The components of Williams' proposed class

Williams defines her proposed class as follows:

> All natural persons in the United States who, within four years preceding the filing of this case, received more than one telephone solicitation call from PGI within a 12-month period telemarketing newspaper subscriptions more than 31 days after registering their telephone number with the National Do-Not-Call Registry.

It should be noted that this definition does not include the elements needed to determine any affirmative defenses to liability under 47 C.F.R. § 64.1200(c)(2), including an established business relationship defense.  This is relevant at this stage because Williams and PGI disagree as to the

proper method to determine whether PGI called someone more than 18 months after an account's Close Date, marking the expiration of any EBR.  Williams' expert argues that the court should equate 18 months with 540 days, whereas PGI's expert argues that the court should equate 18 months with 547 days.  Because an EBR constitutes an affirmative defense that PGI must prove, it is not necessary to determine which expert's argument prevails at the class certification phase.  It is, however, necessary to consider whether PGI's affirmative defenses can be resolved on a class-wide basis and to determine whether the particular characteristics of those affirmative defenses undermine any of the Rule 23 class certification requirements.  *See Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.,* 453 F.3d 179, 184 (3d Cir. 2006) ("Rule 23(c)(1)(B) requires district courts to include in class certification orders a clear and complete summary of those claims, issues, or defenses subject to class treatment."); *Beck v. Maximus, Inc*., 457 F.3d 291, 296 (3d Cir. 2006) ("Courts of appeals have held that unique defenses bear on both the typicality and adequacy of a class representative.").  I will accordingly assess how PGI's potential EBR defense impacts the viability of class certification, even though it is not integral to the definition of the proposed class.

### B.  Williams has satisfied the prerequisites of Rule 23(a)

#### 1.  The proposed class is sufficiently numerous.

Rule 23(a) first requires that the proposed class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Third Circuit has explained that "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Like all

Rule 23 requirements, numerosity must be proven by a preponderance of the evidence.  *See Hydrogen Peroxide*, 552 F.3d at 307.

Plaintiff's expert concluded that PGI called 4,997,966 unique telephone numbers that were on the DNC during the Class Period.  PGI has not formally disputed this fact and has admitted that it made 85,968,340 total calls to telephone numbers on the DNC during the Class Period.  Thus, as defined without reference to any affirmative defense that PGI bears the burden of proving, the proposed class is sufficiently numerous.

But the proposed class is also sufficiently numerous even when taking the EBR defense into account.  In response to Defendant's critique of her report, Verkhovskaya re-conducted her analysis using PGI's proposed 547-day statutory grace period.  She concluded that even under PGI's model, 279 unique phone numbers that fall within the class would fail to meet the criteria for the EBR exemption.[6]  Defendant's expert Stinnett carried his analysis even further, contending that only eight individuals, including Williams, would fall within the class under the 547-day grace period.   Verkhovskaya responded to that contention with additional analysis identifying a statistical error in Stinnett's analysis, to which PGI has offered no rebuttal.  I therefore conclude that Williams has sufficiently proved numerosity, despite some remaining dispute over the ultimate size of the class.[7]

---

[6] Verkhovskaya does not offer any explanation for the stark contrast in numbers.  But given that PGI is a nationwide organization with numerous call centers making millions of calls it seems  plausible that an additional seven days could have a substantial effect on the analysis.

[7] In her Motion for Class Certification, Plaintiff identified another potential argument against certification, noting that "PGI has claimed in later conference with Plaintiff's counsel that the 1,155 phone calls from PGI's own phone logs Verkhovskaya found were in violation of the TCPA were never dialed calls, but rather had too many numbers to be dialed calls." Pl.'s Memo. in Support of Am. Mot. for Class Cert. at 12. PGI has submitted nothing to support such an argument, and were Defendant to assert such a position it would call into question the validity of all of its call logs.

### 2. Williams' claims are typical.

Rule 23(a) next requires named plaintiffs to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality inquiry involves a comparison of "the attributes of the plaintiff" and "the class as a whole" to determine if they are sufficiently similar. *See Marcus*, 687 F.3d at 598. That inquiry "ensures the interests of the class and the class representatives are aligned so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 427-28 (3d Cir. 2016) (internal quotations omitted).

The typicality inquiry also requires courts to ask whether there is "some degree of likelihood a unique defense will play a significant role at trial." *Beck*, 457 F.3d at 300. A unique defense precludes certification where the defense is "both inapplicable to many members of the class and likely to become a major focus of the litigation." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

Nevertheless, the Court of Appeals has "set a low threshold for typicality." *Nat'l Football League Players Concussion Injury*, 821 F.3d at 427 (internal quotations omitted). Indeed, "[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Id*. To test for these similarities, the Court of Appeals has identified "three distinct, though related, concerns":

> (1) the claims of the class representative must generally be the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Marcus*, 687 F.3d at 598 (quoting *Schering Plough*, 589 F.3d at 602).

In this case, Williams' claims are identical to the claims of the proposed class members, since Plaintiff alleges that PGI uniformly violated all class members' rights under the TCPA by calling the class member's DNC-registered number more than once during a twelve-month period.

There is no defense applicable to Williams that is inapplicable to many members of the class. As outlined above, FCC regulations provide three defenses to defendants who have called telephone numbers on the DNC registry. First, defendants can attempt to prove that the call was the result of an error despite the telemarketer maintaining procedures, training, and records to generally avoid such violations. This defense turns on proof of the defendant's own internal procedures and is therefore common among the class. Second, defendants can attempt to prove that they have the plaintiff's signed written consent to make the call, but PGI has admitted that it does not call DNC-registered telephone numbers based on signed written consent. Finally, defendants can attempt to prove that they had an EBR with the DNC-registered telephone number. PGI admits to having called Williams' telephone number because it inaccurately thought that it had an EBR with Williams, and Williams argues that such a fact pattern is typical among roughly 30,373 members of the proposed class. It is true that this defense may be successful for some members of the proposed class and not others, but analysis of the defense is still relevant to each class member. Furthermore, this defense can be determined by analysis of PGI's records and will therefore not overwhelm the rest of litigation. *See Kelly v. RealPage Inc.*, 47 F.4th 202, 224 (3d Cir. 2022). Finally, Williams has proven that her interests and incentives align with those of the class, as I will discuss further when assessing whether Williams is an adequate representative.

Williams has shown that there is a strong similarity of legal theories between all members of the proposed class and that the class's claims arise from the same practice or course of conduct on the part of PGI. I therefore conclude that the typicality requirement is met.

### 3.  Williams is an adequate representative.

Rule 23(a) finally requires named plaintiffs to demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry has two components, testing whether plaintiff's counsel is qualified to represent the class and detecting "conflicts of interest between named parties and the class they seek to represent." *Schering Plough*, 589 F.3d at 602.

Plaintiff's counsel's experience in class action litigation, approval by other courts in such litigation, and effort litigating this case so far all suggest that counsel is in fact qualified to represent the class.  Moreover, Defendant has put forward no evidence or argumentation suggesting that counsel is not qualified.  After reviewing Plaintiff's evidence pertaining to counsel's qualifications, *see* Decl. of Jarrett Ellzey, ECF 43-15, I conclude that Plaintiff's counsel is competent and adequate to represent the proposed class.

Turning to the adequacy of the class representative, Williams is a member of the proposed class, has no divergent interests from the rest of the class, and has suffered the same alleged injury as the rest of the class.  Neither party has introduced any evidence or argument that would suggest that Williams is an improper representative.  While Williams potentially differs from some members of the class in that PGI admits to improperly calling Williams and seven others but denies improperly calling anyone else, Williams has shown that this difference does not undermine her ability to represent the class by retaining Verkhovskaya to statistically determine the viability of

other class members' claims.  I therefore conclude that she is an adequate representative for the proposed class in this litigation.

### C.  Williams has satisfied the prerequisites of Rule 23(b)(3)

Certification under Rule 23(b)(3) is permissible when the Court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see Hydrogen Peroxide*, 552 F.3d at 310. The twin requirements of Rule 23(b)(3) are known as predominance and superiority.

In addition to those textual requirements, a Rule 23(b)(3) class must also be "currently and readily ascertainable based on objective criteria."  *Marcus*, 687 F.3d at 593.  As with the Rule 23(a) inquiries, the party seeking class certification "has the burden of making this showing by a preponderance of the evidence, and the district court must 'undertake a rigorous analysis of the evidence to determine if the standard is met.'"  *City Select Auto Sales v. BMW Bank of North America Inc*., 867 F.3d 434, 439 (3d Cir. 2017); *see also Hydrogen Peroxide*, 552 F.3d at 318 (discussing the origin and contours of the "rigorous analysis" requirement).

### 1.  The proposed class is currently and readily ascertainable.

To satisfy the ascertainability standard, a plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd*, 784 F.3d at 163 (quoting *Carrera v. Bayer Corp*., 727 F.3d 300, 306 (3d Cir. 2013)). Importantly, however, a plaintiff need not "be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members *can* be identified.'"  *Id*.

(quoting *Carrera*, 727 F.3d at 308 n.2) (emphasis in *Byrd*).  Williams' proposed class is currently and readily ascertainable.

Class members in TCPA can generally be identified through records in the defendant's or its vendors' possession, as is the case here.  *See, e.g.*, *Birchmeier v. Caribbean Cruise Line, Inc*., 302 F.R.D. 240, 248 (N.D. Ill. 2014); *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 566 (W.D. Wash. 2012).  Class members in this case can be ascertained by identifying all persons who received more than two calls within a twelve-month period, while registered on the National DNC Registry—these are "objective criteria" for purposes of class certification.  Verkhovskaya has demonstrated that this analysis can be conducted using PGI's call data and publicly available DNC records.  The "matching of records is precisely the sort of exercise [that the Third Circuit has] found sufficiently administrable to satisfy ascertainability."  *Kelly*, 47 F.4th at 223.

The potential success of affirmative defenses is likely ascertainable using PGI's records and publicly available data, as well.  Through Verkhovskaya's analysis, Plaintiff has submitted sufficient evidence showing that whether individual class members had an EBR with PGI could be determined through analysis of call logs, CRM data, and DNC records, regardless of whether a 540-day or 547-day cutoff is used.  The Third Circuit has stated that "straightforward 'yes-or-no' review of existing records to identify class members is administratively feasible even if it requires review of individual records with cross-referencing of voluminous data from multiple sources."  *Id.* at 224.  Because factual determinations as to the EBR exemption will not require "extensive and individualized fact-finding or 'mini-trials,'" this affirmative defense does not undermine Plaintiff's satisfaction of the "ascertainability" prong of Rule 23(b)(3).  *Marcus*, 687 F.3d at 593.

Neither of the other two regulatory defenses undermine ascertainability.  PGI has admitted that it does not call DNC-registered telephone numbers based on signed written consent, and the

issue of whether PGI maintains procedures, training, and records to generally avoid TCPA violations can be determined solely based on PGI's own actions and records. Plaintiff has therefore proven that the proposed class is readily ascertainable.

### 2. Proceeding as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy

Rule 23(b)(3) next requires that the class action to be "superior" to other available adjudicatory methods. The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004) (internal quotation marks omitted). To do so, courts consider the "nonexhaustive list of factors" detailed in Rule 23(b)(3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997). Those factors are

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Because TCPA cases like this can involve hundreds of relatively small, factually-similar claims, "[c]lass certification is normal in litigation under [the TCPA]." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). I am further convinced that Williams has suggested a workable method for assessing class members' claims in an efficient manner. Not only is a class action the most efficient way for resolving such claims, but no parties have put forward evidence or argument suggesting that any of the Rule 23(b)(3)(A)-(D) factors weigh against class certification. After careful review of these factors, I conclude that the superiority requirement is satisfied.

### 3.   Common questions of law and fact predominate over individual ones

Rule 23(b)(3) finally requires that common questions of law or fact "predominate" over questions affecting individual class members.  The predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  To that end, the analysis entails (a) first examining each element of the plaintiff's legal claim to see if it involves common issues of law or fact and then (b) determining whether issues common to the class overwhelm issues subject to individualized proof.  *See Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 370-71 (3d Cir. 2015); *see also* 2 Newberg on Class Actions § 4:50 (5th ed.) ("[T]he predominance analysis logically entails two steps—the characterization step and the weighing step. A court must first characterize the issues in the case as common or individual and then weigh which predominate."). The first step largely mirrors the commonality analysis under Rule 23(a)(2).  *See Danvers*, 543 F.3d at 148 ("The commonality requirement is subsumed by the predominance requirement."). Proving commonality requires the plaintiffs to demonstrate that their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  But commonality "does not require identical claims or facts among class members."  *Marcus*, 687 F.3d at 597-98 (alteration omitted).  "For purposes of Rule 23(a)(2), even a single common question will do."  *Dukes*, 564 U.S. at 359 (quotation marks and alterations omitted).

In this case, Plaintiff correctly notes that their claims all rest upon a shared and easily identifiable issue:  did PGI (or its agents) place two or more calls to individuals within a 12-month timeframe while those numbers were registered on the DNC for more than thirty days?  PGI's regulatory defenses also rest upon shared and easily identifiable issues, such as whether class

members' had EBRs with PGI when they received the relevant calls.  The resolution of these issues will turn on interpretations of the same data: the National DNC, PGI's Call Records, and PGI's CRM data.  Plaintiff therefore easily satisfies the commonality requirement for preliminary certification purposes.

Finding that Williams has offered common questions, I must still examine whether those questions predominate over individual ones.  The predominance requirement of Rule 23(b)(3) "is even more demanding" than the commonality prerequisite since the Court must "ensure that issues common to the class predominate over those affecting only individual class members."  *Behrend*, 569 U.S. at 34; *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  After careful consideration of the record, I conclude that Williams has satisfied the predominance requirement of Rule 23(b)(3).

As Williams correctly notes, TCPA claims like the ones before me center on large groups of plaintiffs who have received the same scripted calls from the same defendant based on a shared course of conduct.  What's more, PGI has not identified any individualized defenses that could predominate over the common issues that are fundamental to liability.  In its Answer, PGI states that the consent of proposed class members to receive calls is an individualized inquiry, but PGI later admitted that it "does not use or consider Prior Express Consent when determining whether they can legally make telephone calls to those individuals on the DNC/IDNC lists," and that calls to individuals on the DNC/IDNC lists are "only made pursuant to an [EBR]."  Def's Answers and Objections to Pl's First Set of Interrogatories at 8, ECF 43-13.  Whether a proposed class-member had an EBR can, in turn, be determined by analysis of PGI's own data, and thus will not predominate over common issues.  I therefore conclude that common issues predominate.

**IV.    Conclusion**

For the reasons set forth above, Plaintiff's Amended Motion for Class Certification will be
granted.  An appropriate Order follows.

/s/ Gerald Austin McHugh
United States District Judge